IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN SOMMER,

      Plaintiff,

  v.

REGENCE BLUECROSS BLUESHIELD
OF OREGON,

      Defendant.

Case No. 3:23-cv-01140-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

  Plaintiff Brian Sommer ("Sommer") filed this action against Regence BlueCross BlueShield of Oregon ("Regence") seeking a determination of his rights to medical benefits and to recover such benefits, and other equitable relief, under the Employee Retirement Income Security Act of 1974 ("ERISA"). The parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. (ECF No. 44.)

  Before the Court is Regence's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(a) (ECF No. 25), and Sommer's motion for leave to file a first amended complaint pursuant to Rule 15(a)(2) (ECF No. 36). The Court heard oral argument

PAGE 1 – OPINION AND ORDER

on both motions on November 8, 2024. For the reasons explained below, the Court denies both motions.

**BACKGROUND**[1]

## I.    THE MEDICAL PLAN

Sommer is an "[e]mployee" of "[e]mployer" Immix Law Group, PC ("Immix"), consistent with 29 U.S.C. §§ 1002(5)-(6). (Compl. ¶ 4, ECF No. 1; Def.'s Answer ("Answer") ¶ 4, ECF No. 11.) Sommer is a "[p]articipant" in Immix's group medical benefits plan ("Medical Plan") pursuant to 29 U.S.C. § 1002(7). (Compl. ¶ 4; Answer ¶ 4.) Regence issued the Medical Plan to Immix, and it is subject to ERISA. (Def.'s Mot. Partial Summ. J. ("Def.'s Mot.") at 2, ECF No. 25.)

## II.    SOMMER'S MEDICAL EXPENSES

In 2020, Sommer was prescribed the SomnoDent Appliance to treat his obstructive sleep apnea. (Aff. Brian Sommer Supp. Pl.'s Resp. Def.'s Mot. ("Sommer Aff.") ¶ 2, ECF No. 33.) In February 2021, Sommer stopped wearing the device because "he started to develop significant pain in and around the area of both [temporomandibular joints ("TMJs").]" (Pl.'s Resp. Def.'s Mot. ("Pl.'s Resp.") at 4, ECF No. 31; Sommer Aff. ¶ 4.)

In May 2022, Dr. Lyly Fisher examined Sommer's TMJs and recommended that he schedule a surgical consultation with Dr. Brian Shah. (Sommer Aff. ¶ 6.) Sommer paid $960.00 for Dr. Fisher's services. (*Id.* ¶ 7; *see also* Sommer Aff. Ex. A, ECF No. 33-1, referencing the billing statement).

///

---

[1] Unless otherwise noted, the following facts are either undisputed or viewed in the light most favorable to the nonmoving party (i.e., Sommer).

On September 20, 2022, Dr. Shah evaluated Sommer's TMJs and determined that surgery was necessary. (Sommer Aff. ¶ 8.) Sommer paid $650.00 for an MRI and a $2,050.00 consultation fee in connection with Dr. Shah's evaluation. (*Id.* ¶ 9; *see also* Sommer Aff. Ex. B, ECF No. 33-2, referencing the MRI billing statement; Sommer Aff. Ex. C, ECF No. 33-3, referencing Dr. Shah's billing statement).

On November 17, 2022, Sommer wired $44,100.00 to Dr. Shah to prepay a surgeon fee and post-surgery imaging and evaluations. (Sommer Aff. ¶ 11; *see also* Sommer Aff. Ex. D, ECF No. 33-4, referencing six billing statements associated with Dr. Shah's services and a bank statement evidencing the wire transfer). Dr. Shah successfully performed the TMJ surgery on December 8, 2022. (Sommer Aff. ¶ 10.) In connection with the surgery, Sommer paid a $18,140.00 hospitalization fee and $4,046.25 for anesthesia. (*Id.* ¶¶ 13-14; *see also* Sommer Aff. Ex. F, ECF No. 33-6, referencing the hospital payment agreement; Sommer Aff. Ex. G, ECF No. 33-7, referencing the anesthesia billing statement).

At Dr. Shah's direction, Sommer also obtained pre-surgery orthodontic care and pre- and post-surgery chiropractic care at a cost of $3,200.00 and $1,750.00, respectively. (Sommer Aff. ¶¶ 12, 15; *see also* Sommer Aff. Ex. E, ECF No. 33-5, referencing the orthodontic billing statement; Sommer Aff. Ex. H, ECF No. 33-8, referencing the chiropractic billing statement). Dr. Shah also prescribed Sommer medication totaling $165.19. (Sommer Aff. ¶ 16; *see also* Sommer Aff. Ex. I, ECF No. 33-9, referencing the medication billing statement).

There are fourteen billing statements associated with Sommer's treatment, totaling approximately $75,000.00 in out-of-pocket expenses. (Pl.'s Resp. at 3.)

///

///

PAGE 3 – OPINION AND ORDER

III.    **THE FILED CLAIMS**

Of the fourteen billing statements, Sommer filed internal claims with Regence for three: one for the TMJ surgery and two for post-surgery imaging (the "Filed Claims"). (*See* Sommer Aff. Ex. D at 3-5, referencing the billing statements of the Filed Claims).

On October 12, 2022, Dr. Shah "request[ed] prior authorization for coverage of [] Sommer's [TMJ surgery]." (Pl.'s Resp. at 7; Decl. Medora Marisseau Supp. Def.'s Mot. ("Medora Decl.") Ex. B at 9-10, ECF No. 30, referencing Dr. Shah's medical necessity letter to Regence). On October 18, 2022, Regence denied the request, explaining that "services and supplies provided for TMJ disorder treatment are listed as excluded from coverage." (Medora Decl. Ex. B at 5-6, referencing Regence's denial letter).

After Sommer's surgery, Dr. Shah "submitted to Regence a [second] coverage claim for the [surgery]." (Pl.'s Resp. at 12; Medora Decl. Ex. B at 2, referencing the claim). Regence denied this claim too. (Medora Decl. Ex. B at 3-4, referencing Regence's processing of the surgery claim). Thereafter, on May 30, 2023, Sommer appealed Regence's prior authorization and post-service coverage denials. (Decl. Megan Glor Supp. Pl.'s Resp. ("Glor Decl.") Ex. 2 at 4-10, ECF No. 37, referencing the appeal). On July 10, 2023, Regence denied the appeal and declared that TMJ "services and supplies provided in connection with TMJ disorder are a specific exclusion. . . . [T]his is treatment for TMJ disorder and therefore not covered." (Sommer Aff. Ex. J at 2, ECF No. 33-10, referencing the denial letter).

On December 9, 2022, Regence approved a claim submitted by Dr. Shah for CT imaging performed the day after Sommer's TMJ surgery. (Def.'s Reply Supp. Def.'s Mot. ("Def.'s Reply") at 5-6, ECF No. 39; *see also* Sommer Aff. Ex. D at 4, referencing the billing statement for the claim; Medora Decl. Ex. B at 3, referencing Regence's processing of the claim). Sommer acknowledges that Regence covered this claim, with the "qualifications that Regence did not use

the word 'approved' in the documentation . . . and that Regence noted 'The Amount we paid' to be '$0.00.'" (*See* Medora Decl. Ex. C at 4, ECF No. 27-3, referencing Sommer's response to Regence's request for admission).

Dr. Shah also submitted a claim with Regence for a CT scan performed on March 27, 2023. (Def.'s Mot. at 5; *see* Sommer Aff. Ex. D at 5, referencing the billing statement). Regence responded that "[p]reauthorization was not obtained," and the "[c]laim will be considered upon receipt of additional information from provider." (Medora Decl. Ex. D at 2-3, ECF No. 27-4; Def.'s Mot. at 5.)

## IV.    THE UNFILED CLAIMS

Sommer did not file internal claims with Regence for any of his other out-of-pocket expenses (the "Unfiled Claims").[2] (Pl.'s Mot. Am. Compl. ("Pl.'s Mot.") at 4, ECF No. 36.) These include expenses from Dr. Fisher's examination, Dr. Shah's initial evaluation, and Sommer's hospitalization stay, anesthesia, post-surgery imaging, orthodontic and chiropractic care, and medications. (*Id.* at 3-4; Decl. Tim Huddleston Supp. Def.'s Mot. ¶ 5, ECF No. 26.)

## V.    PROCEDURAL HISTORY

On August 4, 2023, Sommer filed a complaint seeking relief under 29 U.S.C. §§ 1132(a)(1)(B) (the "Benefits Claim"), 1132(a)(3) (the "Equitable Claim"), and 1132(g)(1). (Compl. at 5-6.) In his complaint, Sommer alleges that Regence erroneously denied Dr. Shah's prior authorization and post-surgery claims, as well as Sommer's appeal, and "seeks a judgment overturning Regence's [] denial and awarding [] Sommer relief under ERISA." (*Id.* ¶ 3.) Sommer seeks "to recover benefits due under the Medical Plan that were wrongfully denied . . . and to

---

[2] It is unclear from the record whether Sommer filed an internal claim with Regence for Dr. Shah's December 2, 2022, services, totaling $916.00. (*See* Sommer Aff. Ex. D at 2, referencing the billing statement).

enforce his rights under the terms of the Medical Plan," and "to the extent relief is not available under" the Benefits Claim, Sommer also "seeks equitable relief . . . arising from Regence's breaches of its fiduciary duties." (*Id.* ¶¶ 16, 20.) Regence answered on November 20, 2023. (Answer at 1-5.)

On December 11, 2023, Sommer provided Regence's counsel a settlement communication seeking Sommer's "out-of-pocket expenses." (*See* Glor Decl. ¶ 4, ECF No. 32, referencing the settlement communication; *see also* Decl. Megan Glor Suppl. Pl.'s Mot. ("Second Glor Decl.") Ex. 1, ECF No. 48, same). In January 2024, Regence's counsel responded to Sommer, stating that Regence would not cover the Unfiled Claims "because they had never been submitted to Regence under the Plan's claim and appeal process, nor were they referenced anywhere in [Sommer's] Complaint." (Decl. Medora Marisseau Suppl. Def.'s Resp. Pl.'s Mot. ("Second Medora Decl.") ¶ 4, ECF No. 42.)

On June 27, 2024, the parties submitted a joint status report in which Regence gave notice that it intended to file a motion for partial summary judgment. (Joint Status Report at 1-2, ECF No. 17.) Thereafter, on July 25, 2024, the parties conferred and discussed Regence's intent to move for partial summary judgment on the Unfiled Claims. (*See* Medora Decl. Ex. E, ECF No. 27-5, referencing emails between Sommer and Regence regarding Regence's motion).

On July 29, 2024, Regence moved for partial summary judgment (*see generally* Def.'s Mot.), and on August 26, 2024, Sommer responded. (*See generally* Pl.'s Resp.) One day later, Sommer moved for leave to file a first amended complaint. (*See generally* Pl.'s Mot.)

///

///

///

**LEGAL STANDARDS**

"A grant of summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc) (quoting FED. R. CIV. P. 56(a)). "[T]he mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

"A material fact is one that is needed to prove (or defend against) a claim, as determined by the applicable substantive law." *Simmons v. G. Arnett*, 47 F.4th 927, 932 (9th Cir. 2022) (citing *Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 533 (9th Cir. 1996)); *see also Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) ("A fact is 'material' only if it might affect the outcome of the case[.]" (quoting *Anderson*, 477 U.S. at 248)). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) (en banc) (quoting *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020)); *see also Fresno*, 771 F.3d at 1125 ("[A] dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." (quoting *Anderson*, 477 U.S. at 248)).

In determining whether a genuine issue of material fact exists, a court views the evidence in the light most favorable to, and draws all justifiable inferences in favor of, the nonmoving party. *See McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 706 (9th Cir. 2019) (per curiam) ("The court views 'evidence in the light most favorable to the nonmoving party,' to determine 'whether genuine issues of material fact exist.'" (quoting *George v. Edholm*, 752 F.3d 1206,

1214 (9th Cir. 2014))); *Brown*, 82 F.4th at 874 ("When determining whether a genuine issue of

material fact exists, [a court] 'must draw all justifiable inferences in favor of the nonmoving

party.'" (quoting *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir. 2021))). In

doing so, a "court . . . may not judge credibility, weigh the evidence, or resolve factual

disputes[.]" *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 437 (9th Cir. 2023) (citing *Anderson*,

477 U.S. at 255).

## DISCUSSION

Before the Court is Regence's motion for partial summary judgment and Sommer's

motion for leave to file a first amended complaint. Regence presents three arguments in its

motion: (1) Sommer "is not entitled to recover on the [Unfiled Claims]"; (2) Sommer's recovery

on the TMJ surgery—if any—should be "limited by what the [Medical Plan] would have paid if

the claim was covered"; and (3) relief sought under Sommer's Benefits Claim and Equitable

Claim is duplicative. (Def.'s Mot. at 15-16.) In his motion, Sommer seeks leave to plead

additional facts "regarding his [Equitable] [C]laim . . . regarding the Unfiled Claims[.]" (Pl.'s

Mot. at 5) (simplified).

For the reasons explained below, the Court denies Regence's motion for partial summary

judgment and denies Sommer's motion for leave to amend.

## I.    APPLICABLE LAW

### A.    ERISA

"ERISA comprehensively regulates . . . employee welfare benefit plans that, 'through the

purchase of insurance or otherwise,' provide medical, surgical, or hospital care[.]" *Pilot Life Ins.

Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (citing 29 U.S.C. § 1002(1)). When Congress codified

ERISA, it sought to "protect . . . the interests of participants in employee benefit plans" by (1)

requiring the disclosure and reporting of financial information, (2) establishing standards of

conduct for fiduciaries of benefit plans, and (3) providing remedies, sanctions, and access to the federal courts. *See* 29 U.S.C. § 1001(b) (explaining the congressional findings and declaration of policy).

Section 1132(a) of ERISA sets forth the "civil enforcement provisions" which are "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of [] claim[s] for benefits." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 953 (9th Cir. 2014) (quoting *Pilot Life Ins. Co.*, 481 U.S. at 52).

### 1. Benefits Claim

Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B); *see also A.F. v. Providence Health Plan*, 157 F. Supp. 3d 899, 908 (D. Or. 2016) ("Under Section 1132(a)(1)(B), a beneficiary may seek reimbursement for out-of-pocket expenses for medical treatment following a wrongful claim denial."). In the complaint, Sommer alleges a Benefits Claim under 29 U.S.C. § 1132(a)(1)(B), seeking "to recover benefits due . . . and to enforce his rights under the terms of the medical plan." (Compl. ¶ 16.)

### 2. Equitable Claim

Under 29 U.S.C. § 1132(a)(3), a participant or beneficiary may bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or [] to obtain other appropriate equitable relief [] to redress such violations or [] to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). In the complaint, Sommer alleges an Equitable Claim under 29 U.S.C. § 1132(a)(3), seeking "equitable relief compelling Regence to restore to him all losses, including interest, arising from Regence's breaches of its fiduciary duties." (Compl. ¶ 20.)

An equitable claim arises from fiduciary duties that ERISA imposes on plan fiduciaries. *See Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1228 (9th Cir. 2020) ("A fiduciary . . . must 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence of a prudent man.'" (quoting 29 U.S.C. § 1104(a)(1) and simplified)). An equitable claim is "a catchall or safety net designed to offer appropriate equitable relief for injuries caused by violations that § 1132 does not elsewhere adequately remedy." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) and simplified).

To establish an equitable claim, a plaintiff must demonstrate "(1) that there is a remedial wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan, . . . and (2) that the relief sought is 'appropriate equitable relief.'" *Gabriel*, 773 F.3d at 954 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)). The Supreme Court has instructed that appropriate equitable relief includes "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens*, 508 U.S. at 256.

In *CIGNA Corp. v. Amara*, the Supreme Court identified three additional equitable remedies under ERISA: (1) the power to reform contracts in the event of fraud or mistake, (2) estoppel, and (3) surcharge. 563 U.S. 421, 440-42 (2011) ("Equity courts possess[] the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."). The surcharge remedy holds fiduciaries liable for "benefits it gained through unjust enrichment or for harm caused as a result of its breach." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012); *see*

*also Amara*, 563 U.S. at 444 ("[A] fiduciary can be surcharged under [29 U.S.C. § 1132(a)(3)] only upon a showing of actual harm[.]").

## II.     ANALYSIS

### A.     The Unfiled Claims

Regence seeks to preclude Sommer from recovering on the Unfiled Claims because Sommer neither included them in his original complaint nor exhausted his administrative remedies as the Medical Plan required. (*See* Def.'s Mot. at 9-11; *see also* Def.'s Reply at 2.) Sommer responds that "Regence was provided adequate notice of [] Sommer's claim for reimbursement, including . . . the Unfiled Claims" and that there exists a "genuine issue of material fact . . . as to whether it was futile for [] Sommer to exhaust ERISA's review and appeal process[.]" (Pl.'s Resp. at 16, 22.)

#### 1.     Sommer's Original Complaint

Regence argues that "[t]he Complaint only alleges that [Sommer] is entitled to benefits for the December 8, 2022, TMJ surgery" and that Sommer "does not identify any other claims, services, or providers." (Def.'s Mot. at 9.) Sommer responds that his Equitable Claim, which seeks "equitable relief for Regence's breach of its fiduciary duties . . . and prays for remedies of disgorgement, restitution, estoppel, surcharge, and/or injunctive or declaratory relief," put Regence on notice that he seeks relief broader than just the Benefits Claim.[3] (Pl.'s Resp. at 22) (simplified).

Under Rule 8(a), a "pleading . . . must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a). A "complaint need not

---

[3] Sommer also notes that Regence knew as early as December 2023 that Sommer is seeking relief relating to the Unfiled Claims, and thus "it is a tenuous argument . . . that [Regence] was caught off guard[.]" (Pl.'s Resp. at 22.)

contain detailed factual allegations, but it must provide more than 'a formulaic recitation of the elements of a cause of action.'" *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he plaintiff must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (simplified). To state an equitable claim under ERISA, a plaintiff must demonstrate "(1) that there is a remedial wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan, . . . and (2) that the relief sought is 'appropriate equitable relief.'" *Gabriel*, 773 F.3d at 954 (citations omitted).

The Court finds that Sommer adequately pleaded the Equitable Claim in his original complaint, and that claim put Regence on notice that Sommer was seeking broader relief than his Benefits Claim.

First, Sommer plausibly alleges a remedial wrong. In the complaint, Sommer alleges that "[t]he Medical Plan provides coverage for treatment to TMJs that suffer an 'Injury' (as the term 'Injury' is defined in the Medical Plan)." (Compl. ¶ 3.) Sommer further alleges that "Regence denied [] Sommer's [TMJ surgery] claim and ERISA appeal by erroneously relying upon an inapplicable policy exclusion" and thus "Regence failed to act in accordance with the documents and instruments governing the Medical Plan, thereby breaching its fiduciary duty to [] Sommer." (Compl. ¶¶ 3, 19.) These allegations put Regence on notice that Sommer is seeking relief for harm resulting from Regence's reliance on the inapplicable policy exclusion. *Cf. Smith v. Cigna Health & Life Ins. Co.*, No. 20-cv-624-SI, 2020 WL 5834786, at *5 (D. Or. Sept. 30, 2020) ("To advance [a] § 1132(a)(3) claim [the plaintiff] must identify . . . a violation of the plan's terms.").

Second, Sommer pleads the full range of appropriate equitable relief in his complaint: "Sommer seeks . . . relief resulting from Regence's unjust enrichment, as well as disgorgement,

restitution, estoppel, surcharge, and/or injunctive or declaratory relief arising out of [Regence's] failure to administer the terms of the Medical Plan." (*Id.* ¶ 21.) The Supreme Court has recognized these forms of relief as appropriate equitable relief under ERISA. *See Amara*, 563 U.S. at 440-42 (recognizing injunctions, mandamus, restitution, contract reformation, estoppel, and surcharge as forms of equitable relief available under ERISA).

Thus, the complaint is clear that Sommer is challenging Regence's denial of coverage for treatment of his TMJ disorder based on an inapplicable policy exclusion, and that he is requesting the full range of equitable relief for harm resulting from Regence's reliance on the policy exclusion. Where Regence had sufficient information to deny Sommer's TMJ surgery claims and appeal based on the exclusion for treatment of TMJ disorder, Regence could not have been unfairly surprised that Sommer necessarily incurred other expenses in connection with his TMJ surgery, including but not limited to anesthesia, medication, a hospital stay, and pre- and post-operative care.

For these reasons, the Court finds that Sommer's complaint provided Regence with fair notice that he is seeking broader relief than just the Benefits Claim, to include equitable relief relating to the Unfiled Claims. (*See* Pl.'s Resp. at 29-32, explaining the relief Sommer seeks under his Equitable Claim; Compl. ¶ 20.)

### 2.    Exhaustion

Although ERISA does not include a statutory requirement for a participant or beneficiary to exhaust administrative remedies, the Ninth Circuit has held that "a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz v. United Agric. Emp. Welfare Benefit Plan and Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995); *see also Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980) (holding that "federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of

sound policy they should usually do so"); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (same).

Here, the Medical Plan contains claim and appeal processes for out-of-network services. (*See* Medora Decl. Ex. A at 8, ECF No. 27-1, explaining the claim process; *id.* at 10, explaining the appeal process). Regence argues that because Sommer did not file internal claims for the Unfiled Claims, Sommer did not exhaust his administrative remedies. (Def.'s Mot. at 9.) Sommer does not dispute that he did not satisfy the exhaustion requirement. (*See* Pl.'s Mot. at 3-4.) Instead, Sommer argues there exists a genuine issue of material fact as to whether it was futile for him to exhaust the Medical Plan's claim and appeal processes. (Pl.'s Resp. at 16.)

An exception to the exhaustion requirement exists when internal review is futile. *See Amato*, 618 F.2d at 568 (recognizing that there are occasions when the exhaustion requirement does not apply, particularly where "resort to the administrative route is futile") (citation omitted); *see also A.F.*, 157 F. Supp. 3d at 909 ("A plaintiff's demonstration of the futility of a plan's internal review procedures . . . constitutes an exception to the exhaustion requirement."). The purpose of the futility exception is to "avoid the need to pursue an administrative review that is demonstrably doomed to fail." *Diaz*, 50 F.3d at 1485. To establish futility, "bare assertions [] are insufficient[.]" *Id.* "[A] Plan's refusal to pay does not, by itself, show futility." *A.F.*, 157 F. Supp. 3d at 909 (simplified).

Regence argues that because Sommer has the burden "to prove that an exception to the exhaustion requirement applies," he should have alleged it in his complaint. (Def.'s Mot. at 10 (citing *Hansen v. Jeffco Painting & Coating, Inc.*, No. C 93-0082 BAC, 1993 WL 204260, at *3 (N.D. Cal. June 8, 1993))). However, in *Albino v. Baca*, the Ninth Circuit held that failure to exhaust is an affirmative defense and "a plaintiff is not required to say anything about exhaustion

in his complaint." 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). Courts have extended this

principle to ERISA cases. *See, e.g.*, *Smith*, 2020 WL 5834786, at *7 (collecting cases and

applying *Albino* to ERISA). Accordingly, the Court concludes that Sommer was not required to

allege exhaustion, or an exception thereto, in his complaint. *See Albino*, 747 F.3d at 1172

(explaining that a plaintiff's burden to demonstrate that the "available administrative remedies

were effectively unavailable to him" arises only after a defendant establishes "an available

administrative remedy, and that the [plaintiff] did not exhaust the available remedy").

     Regence also argues that Sommer cannot demonstrate that exhaustion was futile here

because the Unfiled Claims "involve different providers, a variety of different services . . . , and

implicate different terms and coverages . . . unrelated to the exclusion for TMJ surgery[.]"

(Def.'s Mot. at 10.) Regence notes that some of the Unfiled Claims use the same billing code as

the imaging claim from December 9, 2022, which Regence approved, lack "diagnostic or billing

codes" altogether, or exclude a TMJ diagnosis. (Def.'s Reply at 5-7.) Thus, Regence argues that

Sommer falls short of establishing that exhaustion was "demonstrably doomed to fail." (*Id.* at 8.)

     Sommer responds that all of the services or supplies associated with the Unfiled Claims

were provided in connection with his TMJ disorder and were key components of Dr. Shah's

treatment plan for his TMJ disorder. (Pl.'s Resp. at 20.) Thus, when Regence stated in its denial

letters that "services and supplies provided in connection with TMJ disorder are a specific

exclusion[,]" it was "self-evident" that exhaustion "would have been futile." (*Id.* at 19-20.)

Sommer argues that there is a genuine issue of material fact as to whether the futility exception

applies. (*Id.* at 16; *see also* Pl.'s Reply Supp. Pl.'s Mot. ("Pl.'s Reply") at 6, ECF No. 47.)

     Viewing the facts in the light most favorable to Sommer, and drawing all reasonable

inferences in his favor, the Court concludes a reasonable factfinder could find that the Unfiled

Claims were "demonstrably doomed to fail." *Diaz*, 50 F.3d at 1485; *cf. A.F.*, 157 F. Supp. 3d at 909-10 (holding that exhaustion in ERISA case was futile where the plaintiff identified no incidents in which the defendant-insurer paid for the type of coverage sought, identified "a similarly situated plaintiff who exhausted administrative remedies to no avail[,]" and identified testimony from the defendant-insurer declaring that the plaintiff had exhausted all of his internal remedies and that the next step was to file a claim in court) (simplified).

Here, unlike the plaintiffs in the cases Regence cites, Sommer has presented persuasive evidence in support of his argument that exhaustion would have been futile. *Cf. Diaz*, 50 F.3d at 1485-86 ("[The plaintiff's] bare assertions of futility are insufficient to bring a claim within the futility exception[.]").

In Regence's prior authorization denial, Regence instructed that "[TMJ] Disorder Treatment services and supplies provided for TMJ disorder treatment are listed as excluded from coverage." (Medora Decl. Ex. B at 5-6.) In Regence's subsequent appeal denial letter, Regence reaffirmed that "[TMJ] Disorder Treatment Services and supplies provided in connection with TMJ disorder are a specific exclusion." (Sommer Aff. Ex. J at 2.) Regence argues that any belief that the Unfiled Claims would be denied—based on these statements—is subjective and insufficient to establish futility. (Def.'s Reply at 5.) Yet, as Sommer argues, the Unfiled Claims "were key components of Dr. Shah's treatment plan[.]" (Pl.'s Resp. at 19.) Thus, when Regence denied coverage of the surgery, a reasonable insured would have believed that any additional claims relating to the same treatment plan were doomed to fail. (*See id.*, arguing that it would be "an absurd burden to put on a claimant" to submit the several other claims).

Further, in reviewing the billing statements underlying the Unfiled Claims, many of the billing statements reference "[s]ervices and supplies provided for TMJ disorder treatment," and a

reasonable factfinder could conclude that Regence would have denied those claims too. (*See* Glor Decl. Ex. 1 at 8, referencing the Medical Plan exclusion for TMJ disorder treatment).

For example, although Dr. Fisher's billing statement lists "Atypical Facial Pain" as the primary diagnosis code, the medically billable procedure codes include "TMJ Tomography." (Sommer Aff. Ex. A at 2.) In addition, Dr. Shah's September 2022 billing statement lists "[a]rthropathy of bilaterial [TMJ]" as a diagnosis code. (Sommer Aff. Ex. C at 2.) Further, in the billing statements associated with Dr. Shah's "pre-surgery and post-surgery services and supplies," four of the six billing statements explicitly reference TMJ disorder as the diagnosis. (*See* Sommer Aff. Ex. D at 2-4, 6, listing M26.653 as a diagnosis code, which corresponds to "[a]rthropathy of bilateral [TMJ]"; *see generally* Sommer Aff. ¶ 11, explaining the billing statements). Included within the hospital "self-pay price agreement" is procedure code "21240" which corresponds to arthroplasty of the TMJ. (*See* Sommer Aff. Ex. F at 2, referencing the "self-pay price agreement"; *see also* Def.'s Mot. at 2-3, defining procedure code 21240 as "arthroplasty, [TMJ], with or without autograft"; Pl.'s Resp. at 30, defining CPT 21240 as "[TMJ] arthroplast[y]"). Finally, Sommer's chiropractic billing statement references "Treatment for TMJ" as a service provided. (Sommer Aff. Ex. H at 2.) Thus, several of the Unfiled Claims identified in the record explicitly reference TMJ disorder or treatment.

Regence denied Sommer's request for pre-authorization of his TMJ surgery, then denied his claim for the surgery, and then denied his appeal, clearly stating its position that "services and supplies provided in connection with TMJ disorder are a specific exclusion" and the surgery was "treatment for TMJ disorder and therefore not covered." (Sommer Aff. Ex. J at 2, ECF No. 33-10, referencing the denial letter). Notably, Regence does not now assert that it denied coverage in error, or that it would have approved any of the Unfiled Claims had Sommer

continued to submit separate claims and appeals for each expense associated with his TMJ disorder treatment plan. Instead, Regence suggests that a reasonable insured should have continued to submit claims despite Regence's repeated denials of coverage, and that Regence may have approved certain expenses if the billing codes did not disclose that the service or supplies were actually related to Sommer's TMJ disorder treatment plan.[4] (Def.'s Reply at 5-7.) In light of Regence's repeated denials and invocation of the policy's exclusion for "services and supplies provided in connection with TMJ disorder," the Court finds that a reasonable factfinder could conclude that it was futile for Sommer to file any additional claims relating to his TMJ disorder. Accordingly, the Court denies Regence's motion for partial summary judgment on this ground.[5]

### B.    Benefits Claim

Regence argues that if "it is determined that the benefit claim for the TMJ surgery should have been covered, such recovery must be limited . . . to the amount that would be payable under the [Medical Plan], *i.e.*, the Allowed Amount." (Def.'s Mot. at 11; *see also id.* at 12, arguing that Sommer cannot point to any Medical Plan term "which allows him to recover full billed charges for this out-of-network provider"; *see generally* Medora Decl. Ex. A at 11, defining the Allowed

---

[4] Regence emphasizes that its "payment" of a single imaging claim following Sommer's surgery should have provided Sommer with assurance that Regence would approve additional claims relating to his TMJ disorder. (Def.'s Reply at 5-6.) However, viewing that fact in the light most favorable to Sommer, and drawing all inferences in his favor, a reasonable factfinder could alternatively conclude, in light of Regence's unequivocal position that the TMJ disorder exclusion applies, that Regence "paid" the one imaging claim because it required no actual payment.

[5] Sommer opposes Regence's motion for summary judgment but does not affirmatively move for a finding that exhaustion was futile, and therefore the Court will reserve the issue for trial. (*See* Pl.'s Resp. at 2, "[T]his factual dispute is only appropriate for resolution at trial.")

Amount for out-of-network providers as the amount Regence determines to be "Reasonable Charges for Covered Services").

The Court generally agrees with Regence that if the Court determines that Regence wrongfully denied the TMJ surgery claim, Sommer's recovery under 29 U.S.C. § 1132(a)(1)(B) (i.e., the Benefits Claim) is limited to the amount recoverable under the Medical Plan. *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . to recover benefits due to him under the terms of his plan[.]"). However, the Court finds that Sommer may also be entitled to non-duplicative relief under 29 U.S.C. § 1132(a)(3) (i.e., his Equitable Claim), for the reasons discussed below.

### C.    Equitable Claim

Regence argues that Sommer's Benefits and Equitable Claims "allege the *same* injury and seek the *same* relief." (Def.'s Reply at 10; *see also id.* at 9, declaring that Sommer "identifies no other 'monetary losses' other than the benefits to which he alleges he is entitled"). Therefore, Regence concludes that any relief under either the Benefits Claim or Equitable Claim must be limited only to the "benefits to which he alleges he is entitled." (*Id.* at 9-10, "Regence [] seeks to limit [Sommer's] recovery because although he can plead duplicative *claims*, he is not entitled to duplicative *relief*.")

Sommer responds that the remedy available for his Benefits Claim is inadequate to "compensate him for his losses resulting from Regence's claim denial, which was arbitrary and issued in breach of Regence's fiduciary duty[.]" (Pl.'s Resp. at 29.) Sommer argues there exist "material issues of fact" as to "whether [] Sommer is entitled to the relief he claims under [the Equitable Claim.]" (*Id.* at 32.)

ERISA benefit and equitable claims "may proceed simultaneously so long as there is no double recovery." *Castillo*, 970 F.3d at 1229 (citing *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823

F.3d 948, 961 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18,

2016)). An equitable claim must be more than a "repackaged claim for benefits wrongfully

denied." *Robertson v. Standard Ins. Co.*, No. 14-cv-01572-HZ, 2017 WL 3319114, at *3 (D. Or.

Aug. 3, 2017) (quoting *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 375 (6th Cir. 2015)).

Sommer identifies three ways in which his Benefits Claim is inadequate to "compensate

him for his losses resulting from Regence's claim denial[.]" (Pl.'s Resp. at 29-32.) First, Sommer

argues that as a result of Regence's denial of his surgery claim, he "incur[red] financial hardship

in paying out-of-pocket the expenses for his TMJ treatment, without the benefit of [] medical

coverage[.]" (*Id.* at 29.) Thus, Sommer asserts he is entitled to reimbursement for all "out-of-

pocket expenses through the remedy of surcharge as equitable relief." (*Id.* at 30; *see also* Medora

Decl. Ex. E at 3, referencing an email from Sommer's counsel explaining that Sommer is seeking

"all claims/charges relating to Regence's erroneous denial . . . under [the Equitable Claim]").

Second, Sommer argues that by denying his surgery claim, Sommer lost the "reasonable

opportunity to challenge Regence's coverage rate for Dr. Shah's surgery, and to do so in 'real

time.'" (Pl.'s Resp. at 30.) Sommer explains that "[h]ad Regence approved coverage . . . Sommer

could have investigated Regence's coverage rate(s) . . . and challenged those rates." (*Id.*)

Third, Sommer argues that by denying his coverage claim, Sommer lost the "reasonable

opportunity to challenge in 'real time' . . . the availability of qualified in-network

providers . . . to perform the [surgery.]" (*Id.*) Thus, "Sommer lost the reasonable opportunity to

request that Regence's coverage be at in-network rates, or other rates greater than those provided

through Regence's out-of-network schedule[.]" (*Id.* at 31.)

Viewing the facts in the light most favorable to Sommer, and drawing all reasonable

inferences in his favor, the Court finds that Sommer's requested relief for his Equitable Claim is

"more than a repackaged claim for benefits wrongfully denied." *Robertson*, 2017 WL 3319114, at *3. Sommer seeks "make-whole relief" (*see Amara*, 563 U.S. at 442), designed to redress "injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere adequately remedy." *Wise*, 600 F.3d at 1190. There exists a genuine issue of material fact as to whether Sommer is entitled to equitable relief and in what form, and therefore the Court denies Regence's motion to limit Sommer's recovery.

## III.    LEAVE TO AMEND

Shortly after responding to Regence's motion for partial summary judgment, Sommer moved for leave to file a first amended complaint to plead additional facts regarding his Equitable Claim. (Pl.'s Mot. at 5.) Specifically, Sommer seeks to plead additional facts related to the Unfiled Claims. (*Id.*; *see also* Pl.'s Mot. Ex. 1, ECF No. 36-1, attaching the proposed amended complaint). The Court finds that because Sommer's original complaint provided Regence with fair notice of his claim for equitable relief, amendment of the complaint is redundant and unnecessary. Accordingly, the Court denies the motion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion."); *see generally* Fed. R. Civ. P. 15(a)(2).

///

///

///

///

///

///

///

PAGE 21 – OPINION AND ORDER

**CONCLUSION**

For the reasons stated, the Court DENIES Regence's motion for partial summary judgment (ECF No. 25), and DENIES Sommer's motion for leave to file a first amended complaint (ECF No. 36).

**IT IS SO ORDERED.**

DATED this 9th day of December, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge